Heubeet, J.
The facts as to the circumstances which led 1 the minor’s alleged injuries are undisputed and are well summe up as follows in the opinion of the Court of Appeals:
“The automobile in which the minor was a passenger in th rear seat, while stopped for a traffic light, was struck in the real by the automobile driven by the defendant. Defendant admittel that the car in which the minor was a passenger was stoppe< by traffic; that defendant had had some beer and pleaded guilt; to a charge of operating his motor vehicle under the influenc of liquor.”
In the minor’s case, the defendant raises three questions o law, the first two of which are interrelated and discussed late herein. The third question is directed at the discretion of thi trial judge in sustaining a motion for a new trial for the reasoi that “the verdict and judgment are contrary to the weight of th< evidence.” The defendant contends that the trial judge abusec his discretion in so ruling, after having submitted a form o: verdict to the jury permitting it to render a verdict in favor oi the defendant, which the jury did.
It would be repetitious and would serve no useful purpose to review in detail the many cases in which is considered and discussed whether the sustaining of a motion for a new trial after verdict and judgment is an appealable final order. A large number of them are cited in the cases of Hoffman v. Knollman (1939), 135 Ohio St., 170, 20 N. E. (2d), 221, and Green v. Acacia Mutual Life Ins. Co. (1951), 156 Ohio St., 1, 100 N. E. (2d), 211. When the Hoffman case was decided, Section 12223-2, General Code, provided in substance that an order vacating or *367 fcting aside a general verdict of a jury was a final order subject review. This section had been enacted long before the amend-ent, effective January 1,1945, to Section 6 of Article IV of the lio Constitution, which amendment reads as follows:
“The Courts of Appeals shall have original jurisdiction in io warranto, mandamus, habeas corpus, prohibition and pro-dendo, and such jurisdiction as may be provided by law to ¡view, affirm, modify, set aside, or reverse judgments or final ‘ders of boards, commissions, officers or tribunals, and of yurts of record inferior to the Court of Appeals within the ¡.strict.” (Emphasis added.)
Following this constitutional amendment, Section 12223-2, •eneral Code (Section 2505.02, Revised Code), was amended to rovide that “an order vacating or setting aside a judgment and rdering a new trial is a final order.” This section as it was ben in effect was held invalid in the Green case, supra. Two udges wrote dissenting opinions, in one of which a third con-urred, but the holding in that ease has been followed in a num>er of subsequent decisions by this court.
In this case, the Court of Appeals, discussing “abuse of discretion” in its opinion, had this to say:
“The boy was taken to the hospital in an ambulance. He vas examined in the emergency room at the hospital within an lour or so after the accident and complained of ‘pain, right ear, liter blow on side of head following auto accident. ’ The diagnosis was ‘contusion of scalp and pinna.’ It is thus apparent that plaintiff, as a result of the collision, sustained some, if slight, injury for which he would be entitled to at least nominal damages.” (Citing Cooper v. Hall, 5 Ohio, 321.)
Apparently it was not noted that the plaintiff’s petition does not contain any allegation relating to injuries to the scalp and pinna, nor was it amended at any time during the trial.
In this respect the trial court correctly stated in its charge to the jury, “The plaintiff, Thomas DeTunno, is not entitled to recover any damages for injuries which have not been set forth in the allegations of the petition.” In that respect, the instant case differs from the case of Haines v. Cleveland Ry. Co., 141 Ohio St., 523, 49 N. E. (2d), 172, relied on by defendant, wherein the nominal injury was pleaded.
*368 However, within the scope of the rulings discussed abo-JI and the facts of this case the trial court may well have believe! that there was evidence of some pain and suffering as allege® It is not necessary here, therefore, to go into the logic of a rul which treats the granting of a new trial as a final order in on! instance and as not a final order in another instance. Thi court is of the opinion that the Court of Appeals properly foun that there was not such an abuse of discretion as to justify rc versal of the order sustaining the motion for a new trial as final order.
In respect to cause No. 34834, the major issue raised i whether a jury may consider items of hospital and medical ex penses allegedly incurred, where there was no testimony intro duced with respect to the reasonable value of such services, or as phrased by plaintiff, “was there sufficient evidence of tin reasonable value of hospital and medical expenses before th< jury which, combined with matters of common knowledge, was sufficient to permit the jury to return a verdict for the plaintifl in the amount of such hospital and medical expenses.”
Upon examination of the record, we are impressed with thi statement in plaintiff’s brief that “the question of law raised in this case is in reality a question of fact.”
The mother testified that the minor “went to Dr. Klopfer, Dr. Brown, and he was at "White Cross Hospital for treatments, and Dr. Clybourne.” Of these three only Dr. Klopfer and Dr. Clybourne were called as witnesses. Dr. Clybourne testified that he was not employed to treat the minor but solely to examine him, evaluate his condition and report to counsel. He saw him in 1952 and 1954.
Dr. Brown did not testify, and the record is silent as to the necessity and nature of his treatments, although the mother testified as to three or four visits ending in April 1952.
This brings us to Dr. Klopfer. He testified that he first saw the minor on August 14, 1951 (four months after the accident), and four times later, namely, October 12, 19, and November 2, 12, 1951. He rendered a bill for $41 for medical and X-ray services. Following the boy’s first visit, he referred him to Dr. Brown. Dr. Klopfer is a specialist in internal medicine. He also stated that “Dr. Brown suggested we use physical *369 therapy which we did without results and I referred him back ¡to Dr. Brown for further treatment.” With reference to the alleged bone injury, Dr. Klopfer testified to the effect that he noticed from X rays taken on the first visit a “questionable lesion” consisting of a “small questionable chipped fracture” of the vertebra.
He testified further:
“Q. It may not even be a chipped fracture? A. That is right.
“Q. It may be a perfectly normal condition? A. That is right, shall we say not a normal condition but at least it may not be due to an injury.
“Q. That is right,' so that, as we understand each other, we cannot make a positive finding in this case that this boy had any demonstrable bone injury. A. I do not make such a finding, no, sir.
‘ ‘ Q. Now the short wave treatment about which you spoke was designed to relieve the tenseness in the muscles and the soreness of which the patient was complaining? A. That is right. ’ ’
Miss G-reen, physical therapy supervisor at White Cross Hospital, testified that the minor was sent by Dr. Brown and was given nine treatments over a period of a month beginning in January 1952, and that the charge was $4 a treatment. She testified also that the purpose of the treatments was to loosen the muscles and relieve pain and not to affect the bony structure.
Mrs. McCartney, chief medical record librarian at University Hospital, testified from records and identified plaintiff’s exhibits 2 and 3, which were admitted in evidence. Exhibit 2 is a report of treatment on the night of the accident (April 13) for “contusion of scalp and pinna” and an X ray of the minor’s spine in the lumbar region, taken two days later, showing the conclusion, “No evidence of recent bony injury.” Exhibit 3 relates to an accident to the minor occurring August 10, 1953. There was no testimony from her as to the University Hospital charges or distinguishing the costs as to these reports covering two separate accidents.
While the father was on the stand, various bills were *370 marked for identification exhibits 5 to 14 and were offered in evidence, to which objection was made and ruling reserved. These bills range in varying amounts from $4.07 to $59 and were offered only through the father whose knowledge of them is best exemplified by his testimony as follows:
“Q. Now you have identified plaintiffs’ exhibit No. 14 as a bill from Doctors Hospital for $59, what was that for? A. Well I think he did X rays, I don’t know, I wasn’t there. I don’t know a thing about it. My wife took care of all that stuff. I am telling you I wasn’t there. How could I know, he just sent me the bill, and that is all I know about it.
“Q. Who is he? A. Well the doctor.
“Q. Well this bill is Doctors Hospital I am talking about. A. Well yes.
“Q. Do you know what that bill was? A. I couldn’t tell you.”
We can find no other testimony regarding this bill for services. The record is also silent as to the further proffer or further objection as to bills identified as exhibits 8 to 14. Exhibits 5, 6, and 7 were admitted, covering the cost of three back braces totaling $49. As to all these exhibits, the trial court made its ruling, as follows, just prior to charging the jury:
“I therefore hold that there can be no submission to the jury of the claimed items of expense relating to the medical activities and as to the White Cross services. I feel, however, that the items regarding the cost of the several corsets or braces perhaps fall into the other classification and may be submitted to the jury. ’ ’
Plaintiff’s petition, accordingly, was amended by the court so as to limit the amount to $49. On this point the jury was charged in the following language:
“If, from a preponderance of the evidence, you find the defendant is liable in damages under this instruction, you will award the father as plaintiff in his case such damages as will fairly and justly compensate him, but not in excess of the amount set forth in the petition, that is, $5,000, and only as to such as are proved by a preponderance of the evidence, and only, of course, such as were suffered as a direct result and consequence of the defendant’s negligence, if any. In this con *371 nection, yon may consider the expenses reasonably incurred for the supports or braces which may reasonably have been required. No other items of expenses have been properly proven and therefore you will disregard any and all other claimed items of expense.”
We have gone into the evidence this extensively in order to show the apparent confusion in the record. There is no evidence as to Dr. Brown’s bill, exhibit 8. As to exhibits 9 and 10, the testimony of Dr. Klopfer and Miss Green has been reviewed above. We find no evidence as to the value of the University Hospital bill, exhibit 11. Dr. Clybourne’s bills, exhibits 12 and 13, were properly excluded as shown above, and the plaintiff himself testified to a complete lack of knowledge of the bill from Doctors Hospital, exhibit 14.
As to exhibits 9 and 10, it may be argued that, under the more liberal rule asserted in some of the decisions cited below, they should have been admitted as to reasonableness on the testimony of Dr. Klopfer and Miss Green, but the record is silent as to their necessity. We are also confronted by a general verdict for the defendant, even though there was no dispute as to the $49 cost of the braces covered in exhibits 5, 6, and 7.
Following a verdict in favor of the defendant, the trial court overruled a motion for a new trial.
The Court of Appeals in reversing the judgment of the trial court said in its opinion :
“In an action for damages, the normal procedure is to interrogate the physician as to the amount of his bill followed by inquiry as to whether the charge is reasonable. But in the instant case plaintiff’s testimony that he had incurred these obligations was undisputed. The bills themselves may have been properly rejected as hearsay but there was sufficient testimony aside from the bills themselves to go to the jury for its consideration upon this phase of plaintiff’s claim. The weight to be given such testimony was for the jury. To sustain plaintiff’s claim it is unnecessary to bolster it by introducing expert testimony tending to show the reasonable value of such services. Carangelo v. Nutmeg Farm, 115 Conn., 457, 162 A., 4, 82 A. L. R., 1320; Northwest States Co. v. Ashton, 65 P. (2nd), 235; Western Gas Const. Co. v. Danner, 97 F., 882 (9 CCA—1899); *372 Scullane v. Kellogg (1897), 169 Mass., 544, 48 N. E., 622; Moran v. Dover, etc,, St. R. Co., 74 N. H., 500, 69 A., 884 (1908); Farley v. Charleston Basket, etc., Co. (1897), 51 S. C., 222, 28 S. E., 193; Gerbing v. McDonald, 201 Wis., 214, 229 N. W., 860 (1930); contra, Birmingham Amusement Co. v. Norris, 216 Ala., 138, 112 So., 633, 53 A. L. R., 840.
“The court therefore erred to the prejudice of the plaintiff in withdrawing from the consideration of the jury the items of hospital and medical expense.”
The law covering this subject of admissibility seems to be as varied as the jurisdictions of cases cited by counsel. However, as to certain phases of it, there is considerable accord.
In 25 Corpus Juris Secundum, 830, Section 162 (6), it is stated:
“No recovery can ordinarily be allowed for medical, hospital, or similar expenses where there is no proof of the necessity of, and expenditure or liability for, such expenses, and of their reasonableness. In some jurisdictions the amounts paid or agreed to be paid for medical treatment and attention are some evidence of the reasonable value thereof and are sufficient where there is no showing to the contrary, although not conclusive. So, it has been held that plaintiff makes out a prima facie case with respect to such expenses by proving the necessary professional services rendered and the amount of the bill paid or incurred. In other jurisdictions evidence of the amount or payment of such bills does not establish the reasonable value of the services for which the bills were rendered, or justify recovery therefor.”
In Murphy v. S. S. Kresge Co. (Mo. App., 1947), 205 S. W. (2d), 252, an action for personal injuries sustained in a fall in defendant’s store, wherein the attending physician’s testimony regarding such injuries was uncontradicted, but his testimony as to necessity, extent and value of his services was contradictory and evasive, the court said:
“In a personal injury case, where plaintiff recovers, she is entitled to recover the reasonable value of her doctor’s bill, but such recovery is in the nature of special damages, and like the other issues submitted to the jury must have substantial evidence to support it. ’ ’
*373 Reference is made in that case to numerous earlier Missouri cases which hold in effect that, where the evidence fails to show either the amount of the charge or the reasonable value of the services, there is an entire failure of proof. See, also, Girratono v. Kansas City Public Service Co. (1952), 363 Mo., 359, 251 S. W. (2d), 59.
In Young v. Howell (Tex. Civ. App., 1951), 236 S. W. (2d), 247, the court stated:
‘ ‘ The general rule requires that to authorize submission of such items to a jury the expense for medical and hospital services and for medicines must be alleged, and the evidence must show that such expenses were paid or incurred, the amount thereof, and that they were reasonable and necessary in view of the nature of the injury and the attending circumstances. * * *
“We think the evidence in this case was sufficient to show that attention of doctors was necessary in view of the nature of the injuries received by Mrs. Howell and the attending circumstances. But that is not enough. Nowhere in the record is there any testimony as to the amount of such expenses, nor is there any evidence as to the reasonable value of such services. Under the authorities cited, and many others which are cited in the cases and in the text referred to, expenses for medical and surgical attention and hospital services should not have been mentioned in the court’s charge.”
In Jenkins v. A. R. Blossman, Inc. (La. App., 1952), 60 So. (2d), 131, the court said:
“With reference to the quantum of damages, the evidence is very vague and somewhat unsatisfactory. * * * In view of the fact that it would have been easy for the plaintiff to have produced corroborating evidence in support of these two items, which he failed to do, we feel that he has not sustained the burden of proof imposed upon him in that regard and that these two items should not be allowed. His uncorroborated testimony really amounts to self-serving declarations. ’ ’
In Packer v. Fairmont Creamery Co. (1944), 158 Kan., 580, 149 P. (2d), 629, the court held:
“There was also some evidence that plaintiff incurred an expense of $32.50 for X-ray examinations and photographs but this was for the amassing of evidence for use in this lawsuit, not *374 for medical treatment nor incidental thereto. It seems superfluous to say that any such item should not have been included in the jury’s verdict.”
In Kalish v. Milwaukee & Suburban Transport Corp. (1955), 268 Wis., 492, 67 N. W. (2d), 868, the court held that a disallowance of a hill for medical expenses for an injured plaintiff for services rendered by an orthopedic specialist is justified, where the plaintiff was not the specialist’s patient but the services were rendered in preparation for trial. The opinion states that such expenses fall into the category of legal rather than medical expenses.
In Birmingham Amusement Co. v. Norris (1927), 216 Ala., 138, 112 So., 633, the court said:
“In every case where a party has incurred expense as the result of another’s wrong, only so much is recoverable therefor as is a reasonable and proper amount under the circumstances. Manifestly, the party so claiming must show to the jury what is reasonable and proper, as a necessary basis for their finding. If the subject be a matter of common knowledge, and the nature of the charge or expense be before the jury, the sum paid may serve as some evidence of reasonable value in the absence of evidence to the contrary. B. R. L. & P. Co. v. Humphries, 172 Ala., 495, 497, 55 So., 307, citing 3 Suth. On Damages (2d Ed.), 2674. Otherwise, there being no evidence to show what is a reasonable amount, the defendant must either move for the exclusion of the testimony as to payment or liability to pay, at the close of the evidence, or he must ask for an affirmative instruction against recovery in that behalf, as in other cases of failure of proof.” See, also, Hutteball v. Montgomery (1936), 187 Wash., 516, 60 P. (2d), 679, which holds that proof of payment of medical expenses is not enough, but that there must be proof of the reasonableness of the charges or expenses.
In the case of Washington, Baltimore & Annapolis Electric Rd. Co. v. Kimmey (1922), 141 Md., 343, 118 A., 648, where facts comparable to those in the instant case are discussed, the court stated:
“* * * No evidence was offered in regard to these bills except the plaintiff’s statement as to the total amounts incurred ‘since the accident,’ and as to the fact that the doctors’ bills *375 had not been paid. The objection is that the testimony afforded the jnry no means of determining whether or not the expenses sought to be recovered were reasonable, and were wholly dne to the injuries described in the declaration. The evidence on the subject was undoubtedly too general. It presented no details whatever as to the various charges for which the defendant was proposed to be made liable. There should have been a reasonable degree of particularity in the proof of the substantial expenses included in the plaintiff’s claim, and the objection to the testimony on the subject was well founded.”
A contrary rule is indicated in the case of Gerbing v. McDonald (1930), 201 Wis., 214, 229 N. W., 860. See, also, Nunan v. Timberlake (1936), 85 F. (2d), 407.
Here, even though the trial court permitted the undisputed cost of the braces to go to the jury for its consideration, it nevertheless returned a verdict for defendant on which the court rendered judgment, overruling the motion for a new trial. On the evidence in this record, the jury may well have disbelieved the evidence tending to show a proximate causal relationship between the negligence of the defendant and any necessity for these braces. Therefore, the trial court may well have believed that the motion for a new trial in the father’s case should be overruled, although the evidence of some pain and suffering of the son, for which the father could not have recovered, justified sustaining the motion for a new trial in the son’s case.
It is interesting, therefore, to note the case of Phillips v. Georgia Ry. & Power Co. (1921), 27 Ga. App., 21, 107 S. E., 357, in which the court held:
“In a suit for damages against a railroad company, where, under the facts of the case, the only contested issues were the liability of the defendant and the amount of the damage inflicted by it, and a verdict in favor of the defendant was returned, a charge of the court calculated to affect the finding of the jury on the question of the amount of damages only, and not calculated to affect their finding upon the question of the defendant’s liability or nonliability, will not require a new trial, whether erroneous or not.” See, also, Ochsner, Admr., v. Cincinnati Traction Co., 107 Ohio St., 33, 140 N. E., 644.
*376 In view of the authorities cited herein and upon the evidence in this case, we are of the opinion that the trial court did not err in excluding exhibits 8 to 14 and withdrawing from consideration by the jury the items of hospital and medical expenses.
With respect to the other points of error raised by plaintiff in the Court of Appeals and again raised in this court, under the provisions of Section 2505.22, Eevised Code, we have examined the record and hold that they were properly disposed of below.
In cause No. 34833, the judgment of the court of Appeals is affirmed, and, in cause No. 34834, the judgment of the Court of Appeals is reversed and final judgment rendered for defendant.

Judgment in cause No. 34833 affirmed.

Judgment in cause No. 34834 reversed.

Weygandt, C. J., Stewart and Taet, JJ., concur.
ZimmermaN, Bell and Matthias, JJ., concur separately.