MARY WALL, AS ADMINISTRATRIX, ETC., OF WILLIAM WALL, DECEASED, RESPONDENT, v. THE DELAWARE, LACKA- WANNA AND WESTERN RAILROAD COMPANY, APPELLANT.

*Negligence — employment of an engineer who habitually neglects to give notice of the movements of his engine — question for the jury.*

In an action brought to recover damages for injuries alleged to have been caused by the defendant's, a railroad company's, negligence, it appeared that the plaintiff's intestate had been for a considerable number of years, and was at the time of his death, in the defendant's employ; that, at about half-past five o'clock on the morning of his death, he was engaged in shoveling snow, that had fallen on the previous night, from the defendant's tracks, at a point where its road crosses Eighth street in the city of Oswego; that it was a stormy, windy, blustering morning, and while the decedent was thus engaged one Michael Shay, who was also in the defendant's employ and in charge of one of its engines, backed the engine to the place where the decedent was at work and ran over and killed him. There was no light upon the rear of the tender, and nothing was done to indicate the approach of the engine, unless the whistle of the engine was blown which was in dispute. This question, upon which the testimony of the plaintiff and defendant was in conflict, was submitted to the jury by the trial court with instructions that if the whistle was thus sounded their verdict should be for the defendant. The jury, by their verdict, found for the plaintiff.

Plaintiff's evidence tended to show that, during the summer preceding the accident, Shay had on numerous occasions run engines through defendant's yard, and in and across the streets of Oswego, without giving any notice of their movements. There was also evidence which tended to show that this was known to the train dispatcher and the superintendent of the defendant's road, and that this course of action, upon Shay's part, was so frequent that it should have been known to the defendant's officers if they had properly discharged their duties.

*Held*, that the evidence was sufficient to justify the submission to the jury of the question whether the defendant's officers, whose duty it was to employ and discharge servants occupying the position held by Shay, knew, or ought to have known, that Shay was thus habitually negligent; that the court committed no error in submitting the question of defendant's negligence to the jury, and that its finding upon that question should be upheld.

*Coppins* v. *New York Central and Hudson River Railroad Company* (48 Hun, 292) followed.

That the question of decedent's negligence was, under the evidence in this case, a question of fact for the jury, and that the court properly refused to hold, as a matter of law, that he was guilty of contributory negligence, and that it was for the jury to say what inference should be drawn from the facts disclosed by the evidence.

*Newell* v. *Ryan* (40 Hun, 286); *Palmer* v. *New York Central and Hudson River Railroad Company* (112 N. Y., 234–243) followed.

APPEAL by the defendant from a judgment recovered on the verdict of a jury for $4,000, at the Oswego Circuit, which was entered in the office of the clerk of the county of Oswego on the 12th day of January, 1889, and also from an order, entered the 9th day of January, 1889, which denied a motion made by the defendant, upon the minutes of the justice presiding at the trial, for a new trial.

*Rhodes, Coon & Higgins*, for the appellant.

*J. A. Hathway*, for the respondent.

MARTIN, J.:

This case has been three times tried, and this is the third time that it has been before this court. On the first trial the plaintiff had a verdict for $2,000. On appeal to this court from the judgment entered thereon, and from an order denying a new trial, the judgment and order were reversed on the ground that the trial court erred in the exclusion of certain evidence offered by the defendant. On the second trial the plaintiff was nonsuited. From the judgment entered thereon the plaintiff appealed, and this court then held that the trial court erred in refusing to permit the plaintiff to prove the previous negligence of Shay in running locomotives in and across the streets in question, and in nonsuiting the plaintiff without permitting her to make that proof. Thus it is seen that the only questions that were determined by this court on the previous appeals related exclusively to the rejection of evidence. Therefore,

the appellant's claim, that the question of its liability in this action has been passed upon by this court, cannot be sustained. On the third and last trial the plaintiff had a verdict for $4,000. A motion was made for a new trial on the minutes of the trial judge and denied. From the judgment entered on such verdict and from the order denying the defendant's motion for a new trial this appeal was taken.

The appellant now contends that the evidence was insufficient to justify the submission to the jury of the question of the defendant's negligence, or the absence of contributory negligence on the part of the plaintiff's intestate, and that the trial court erred in not non-suiting the plaintiff. The negligence attributed to the defendant was, that it had and retained in its employ a servant who was habitually negligent in the performance of his duties; that the death of the plaintiff's intestate was caused by the negligent act of such servant, and resulted from the failure of the defendant to discharge him from its service. Hence the determination of the question of the defendant's negligence involves the examination of the questions: First, whether the defendant's servant was negligent; and, if so, second, whether the defendant was negligent in retaining him in its service.

The plaintiff's intestate was in the defendant's employ at the time of his death, and had been thus employed for a considerable number of years. At about half-past five o'clock on the morning of his death, January 27, 1885, the decedent was engaged in shoveling snow from the defendant's track at a point where its road crosses Eighth street, in the city of Oswego, N. Y. It was a stormy, windy, blustering morning, and a deep snow had fallen on the previous night. While the decedent was thus engaged, Michael Shay, who was in the defendant's employ and in charge of one of its engines, backed it to the place where the decedent was at work, and the decedent was run over by the engine and killed. There was no light upon the rear of the tender, and nothing was done to indicate the approach of the engine, unless the whistle of the engine was blown.

The plaintiff claims that the whistle was not blown, but that, without any signal or warning whatever, the engine was backed on to the decedent and caused his death. This the defendant denies.

The defendant asserts, and has proved by several witnesses who were at or near the place of the accident, that the whistle was sounded several times. This question was submitted to the jury by the trial court, with instructions that if the whistle was thus sounded their verdict should be for the defendant. The jury by their verdict have found with the plaintiff; therefore the only question on this branch of the case is, whether there was sufficient evidence that the whistle was not sounded to authorize the court to submit that question to the jury. Several witnesses were called by the plaintiff who were near the place where this accident occurred, and who testified that they did not hear any whistle blown, and each describes his situation at the time and the opportunities he had to hear a whistle if sounded. One also testified that he was listening for the whistle of an engine, and that he heard a whistle that he supposed was on an engine on the Rome, Watertown and Ogdensburg Railroad, and that he did not hear a whistle on the defendant's road that morning. On the other hand, the witnesses called by the defendant testified positively that the whistle upon the engine in question was sounded as it approached the place where the decedent was at work. If the witnesses called by the defendant, several of whom were in its employ, were to be believed, the whistle was blown. But the question of their credibility was for the jury. Therefore, if the testimony of the witnesses called by the plaintiff presented sufficient evidence upon this question to justify the jury in finding that the whistle was not blown, then the question was for the jury and its finding should not be disturbed. A careful examination of the evidence has led us to the conclusion that while the evidence of the plaintiff upon that question was not very conclusive it was sufficient to present a question for the jury within the case of *Culhane* v. *New York Central and Hudson River Railroad Company* (60 N. Y., 133), and kindred cases, as modified by the principle of the decision in the case of *Greany* v. *Long Island Railroad Company* (101 N. Y., 419, 423).

It must, therefore, be assumed, in the further discussion of this case, that Shay ran the engine, which he had in charge, over the place where the decedent was at work when killed, without sounding the whistle, or doing anything to apprise the decedent of its

approach, and that he was negligent in so doing. But, assuming such negligence on the part of Shay, yet the defendant was not liable unless it was negligent, as the decedent and Shay were co-employees. A master is not liable to his servant for the negligence of a fellow-servant, unless the master has been guilty of negligence in the selection of such fellow-servant, or in retaining him in his employ after he has become unfit for the service to which he was assigned.

This leads us to the question of the defendant's negligence in employing or retaining Shay in its employ. We do not think the evidence sufficient to justify the conclusion that Shay was incompetent to discharge the duties assigned to him by the defendant, unless such incompetency arose from his habitual negligence and carelessness in the performance of his duties. It was the duty of the defendant to exercise reasonable and ordinary care and diligence in providing proper and fit servants to manage and conduct its affairs. If it did not exercise such care, but negligently or knowingly employed a servant who was unfit to perform the duties assigned to him by reason of his habits of negligence, or failed to dismiss him after it had knowledge of his habitual negligence, or after it might have acquired such knowledge by the exercise of reasonable care and diligence, it was liable to respond in damages to its other employees engaged in the same service for any injury sustained by reason of such unfitness. The care to be exercised by a master in the selection of the servants employed and retained by him in his service is such as is reasonable and proper, in view of the nature and character of the business and the consequences likely to flow from a negligent or unskillful execution of the work. The law, however, presumes that that duty was performed; and before the plaintiff could recover in this action she was bound to prove not only that Shay had previously been negligent in the discharge of his duties, but that the defendant knew of his negligence, or was negligent in not ascertaining it. (*Cahill* v. *Hilton et al.*, 106 N. Y., 512.)

The plaintiff's evidence tends to show that during the summer preceding the accident Shay had, on numerous occasions, run engines through the defendant's yard and in and across the streets of Oswego without giving any notice of their movements. There is also evidence which tends to show that this was known to the

train dispatcher and superintendent of the defendant's road, and that this course of action upon his part was so frequent and continuous that it should have been known to the defendant's officers if they had properly discharged their duty. We think that the evidence was sufficient to justify the submission to the jury of the question, whether the defendant's officers, whose duty it was to employ and discharge servants occupying the position held by Shay, knew or ought to have known, that Shay was thus habitually negligent; that the court committed no error in submitting the question of defendant's negligence to the jury, and that its finding upon that question should be upheld. (*Coppins* v. *N. Y. C. and H. R. R. R. Co.*, 48 Hun, 292.)

This brings us to the consideration of the question of contributory negligence. The appellant contends that the burden of showing affirmatively that the decedent was free from any negligence which contributed to his injury was upon the plaintiff, and that she has failed to sufficiently establish that fact to sustain the recovery in this action. The burden of showing affirmatively, either by direct evidence or by surrounding circumstances, that the decedent was free from contributory negligence was upon the plaintiff. But, as was said by FINCH, J., in *Tolman* v. *Syracuse, Binghamton and New York Railroad Company* (98 N. Y., 203): "The burden of establishing affirmatively freedom from contributory negligence may be successfully borne, though there were no eye-witnesses of the accident, and even although its precise cause and manner of occurrence are unknown. If, in such case, the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence of the deceased, that inference becomes possible, in addition to that which involves a careless or willful disregard of personal safety, and so a question of fact may arise to be solved by a jury and require a choice between possible but divergent inferences." In *Greany* v. *Long Island Railroad Company* (*supra*), it was held that "where there is any evidence, direct or inferential, of care or caution on the part of the person injured, the question as to contributory negligence is for the jury." "The question is, whether the injured party, under all the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually

exercise under like circumstances. This rule must in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury." (RUGER, Ch. J., in *Parsons* v. *N. Y. C. and H. R. R. R. Co.*, 113 N. Y., 364.)

When this case was heard on a former appeal one of the members of this court was of the opinion that decedent was guilty of contributory negligence "in not hearing the signal, or, if he heard it, in not respecting it." This opinion was based on the assumption that the signal was given. The jury have found to the contrary. If we are correct in our conclusion that the evidence was sufficient to sustain that finding, it follows that the decedent was not guilty of contributory negligence in that respect.

We think the question of the decedent's negligence was, under the proof in this case, a question of fact for the jury, and that the court properly refused to hold, as a matter of law, that he was guilty of such negligence. It was for the jury to say what inferences should be drawn from the facts and circumstances disclosed by the evidence. (*Newell* v. *Ryan*, 40 Hun, 286; *Palmer* v. *N. Y., C. and H. R. R. R. Co.*, 112, N. Y., 234, 243.) Nor do we think that the defendant's claim, that it should be held that the decedent knew that Shay was habitually negligent, or should have known it, can be upheld.

We think the judgment and order appealed from should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order affirmed, with costs.