## Anderson Art Company v. Harry Sol. Greenburg.

### Gen. No. 11,498.

1.  ELEVATOR CARRIERS—*liability of.*    Persons operating elevators are carriers of passengers, whose duty it is to use extraordinary care in and about their operation so as to prevent injury to persons thereon.

2.  DECLARATION—*when cured by verdict.*    Obvious defects in a dec-

laration are cured by verdict. After verdict a declaration is good if it appears to state, though defectively, a good cause of action.

3. CONDUCT OF COUNSEL—*what might be ground for reversal.* The conduct of counsel in seeking to get before the jury, in spite of the court's ruling, an assertion that the case was being defended by a party other than the defendant thereto, with the manifest purpose of creating a prejudice injurious to the defendant, might be ground for reversal where the point is urged.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed February 10, 1905.

**Statement by the Court.** This is an appeal from a judgment against appellant for damages for personal injuries.

The charge of the declaration is that appellee was injured because an elevator in the building occupied by appellant upon which appellee had gotten a moment before, was suddenly and violently started without warning. The elevator car had two compartments, one above the other. The upper was used for conveyance of passengers; the lower was used for freight. At the first floor the entrance into the elevator shaft was closed by a sliding gate. The elevator well or shaft did not extend below the basement floor, and hence the upper or passenger compartment of the elevator could not descend into the basement except so far as the height of the lower or freight compartment would permit. When the car was lowered as far as it would go, so that the floor of the freight compartment rested on the floor of the basement, the floor of the passenger compartment was about five and a half feet above the floor of the basement and about two feet below the main or first floor of the building. To go to the basement from the first floor by means of the elevator, one must enter the lower or freight compartment from the first floor, and ride down in that compartment.

Appellee was employed by an express company. He had been for about three years in the habit of calling at the building for freight, which he says was generally on the second or third floor. He states that most of the

heavy freight was down stairs in the basement, but that he seldom got freight from the basement. He was in the habit, however, of going up and down in the elevator. The accident occurred June 13, about 4:30 P. M. Appellee says he was told by the elevator boy that there was a box of freight in the basement. He was then on the first floor of the building, where there was an entrance leading toward the elevator from the street. The upper or passenger compartment of the elevator was then at that floor, the elevator boy sitting in the elevator cage. The boy told appellee to "wait a minute." He then opened the door into the elevator shaft at the first floor, ran the elevator up so as to let appellee get into the lower or freight compartment, the bottom of which was brought up even with the first floor of the building. Appellee says he got in and that the boy said "close the door." The elevator was then standing still. Appellee states that he started to close the door with his left hand, before the elevator began to move, but that the elevator boy "started the elevator right down and hit the bottom of the shaft." His hand was caught between the elevator and the floor, where he says the space between was about half an inch. He testifies that "the minute I jerked the door the elevator boy shot the elevator right down and caught me. It went so fast it hit the bottom before he could stop it." No one else was present at the time of the accident. The palm of appellee's hand was lacerated.

F. J. CANTY and R. W. IRWIN, for appellant; R. J. FOLONIE, of counsel.

No appearance for appellee.

MR. JUSTICE FREEMEN delivered the opinion of the court.

The alleged negligence causing, it is said, the injury for which appellee has recovered, is found in the supposed misconduct of the elevator boy, who is charged with "carelessly, negligently, wrongfully and improperly and suddenly and violently" starting the elevator down "with great suddenness and without any warning to the plaintiff," while

the latter at the operator's request was closing the door to the elevator on the first floor, through which door the plaintiff had just entered the lower or freight compartment of the car.   The evidence of appellee tends to sustain this contention.   In behalf of appellant, on the other hand, the operator contradicts the statement that he requested the plaintiff to close . the door.   He with a number of other witnesses testifies that the elevator was so constructed and operated that it was impossible for it to be started suddenly and swiftly as appellant says it was.   Upon this point, the speed with which the elevator could be started, the preponderance is clearly in favor of appellant.

There is no brief for appellee, and we are without aid from him or his attorneys.   We find in the testimony given in behalf of appellant by the elevator boy, the following: "As I was lowering down, he was trying to shut the gate, and his fingers were caught between the first floor.   I seen the tip of his fingers on the floor, between the floor and the elevator.   There is a space of about an eighth of an inch between the woodwork of the shaft and the car.   I throwed the lever. back and tried to stop the elevator, and I couldn't stop it; she slid on me.   I was going awful slow at the time."   And again on cross-examination the same witness states:   "The elevator slides sometimes.   I don't know what made it slide this time.   It didn't stop till it got down to the bottom.   It slid half a foot.   It slid just as I was going to stop her.   I saw his fingers on the first floor after I started the elevator, while the machine was moving."   From this it appears that there was some defect in the elevator which prevented it being stopped.   The jury were justified in believing from this evidence that had it not been for such defect the elevator would have been stopped in time to prevent the injury.   The boy corroborates appellee's statement that he was trying to close the door.   If the elevator was defective and out of order we cannot say that the jury were wrong in believing that the injury may have been directly caused by such defect and in the manner charged in the declaration.   It is well settled

that persons operating elevators are carriers of passengers, whose duty it is to use extraordinary care in and about their operation so as to prevent injury to persons thereon. Hartford Dep. Co. v. Sollitt, 172 Ill. 222–225; Chicago Exchange Building Co. v. Nelson, 197 Ill. 334; Beidler v. Branshaw, 102 Ill. App. 187–191; Springer v. Ford, 189 Ill. 430–434. The liability of persons owning and operating a freight elevator is measured by the same rules, and they are held to the same degree of diligence. Springer v. Ford, *supra*, p. 437. And when a passenger is injured by the giving way of some portion of the machinery or appliances in a way unexplained, the presumption of negligence arises, and a *prima facie* case is made out by showing that the accident occurred. Idem, p. 435, 436.

The declaration is open to criticism, but we think its obvious defects are cured by the verdict. It is at the most a defective statement of a good cause of action. C. & E. I. R. R. Co. v. Hines, 132 Ill. 161–166.

We need not follow appellant's brief in its detailed criticism of certain of the instructions, inasmuch as none of the alleged defects seem to us to touch upon points of a character such as to mislead the jury or to be harmful to appellant, although we are by no means to be understood as approving them all. The successful effort of appellee's attorney to get before the jury, in spite of the court's ruling, an assertion that the case was being defended by another party instead of the defendant, with the manifest purpose of creating a prejudice injurious to the defense, is we think more serious ground upon which to ask for a reversal; but as the point is not raised more need not be said of it.

The judgment of the Superior Court must be affirmed.

*Affirmed.*