WALTER QUIMBY, APPELLEE, v. BEE BUILDING COMPANY, APPELLANT.

FILED JUNE 10, 1910.   No. 16,078.

1. **Carriers:** PASSENGER ELEVATORS: LIABILITY. One who installs passenger elevators in his building for the use of his tenants and the public generally is subject to the same degree of care in transporting and protecting his passengers as is imposed upon common carriers.

2. ———: LIABILITY. Common carriers of passengers should be held to the strictest accountability and be required to exercise the highest degree of care and forethought of which the human mind is capable. This rule is founded on principles of public policy and enforced by the courts for the protection of the public.

3. Instructions given by the trial court and set out in the opinion sustained.

4. Instructions requested by the defendant and refused by the court and set out in the opinion *held* properly refused.

5. Evidence examined and set out in the opinion *held* sufficient to sustain the verdict of the jury.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*Weaver & Giller, contra.*

FAWCETT, J.

Plaintiff, a boy twelve years of age, who, during the summer vacation of school, was acting as a messenger boy for the Postal Telegraph Company, was injured in

one of the passenger elevators of defendant. From a judgment in his favor for such injury, defendant appeals.

The evidence shows that the floor of defendant's building, at each landing, projects some two or more inches into the elevator shaft and inside of the wire network surrounding the shaft. The space between the floor of the elevator at the opening thereof and the floor of the building is just enough to permit the elevator to pass; so that, if a person standing at the door of the elevator should permit his foot to extend even a very little over the edge of the elevator floor, it would be caught by the lower part of the floor landing above as he ascended. At the time of the injury complained of, plaintiff entered the elevator for the purpose of being carried to a floor above, where he desired to deliver a message. The evidence is somewhat conflicting as to whether he entered the elevator at the first or second floor, but we regard that as immaterial. When the elevator reached the third floor, plaintiff's foot was caught between the elevator floor and the projection above noted, and he received the injury complained of. Plaintiff testified that, when he entered the elevator, he "just turned around and leaned against the side of the elevator—was going to get out right away as soon as I got to the floor I wanted off on"; that he stood near the door all the time. It is evident that while standing there his foot was partially extended beyond the edge of the elevator floor. The elevator conductor testified that plaintiff "stepped clear in the car, something unusual, then stepped back. There being rubber on the floor I did not hear him." This plaintiff denied. The elevator conductor also testified that the boy had been going up and down the elevator for about a month; that he had several times cautioned him to stand back from the door, and on one occasion had pushed him back. He admits that he did not give plaintiff any such direction or caution at the time of the injury. On cross-examination he testified that he had been running an elevator for eight years; that it is dangerous for people to stand up near the door, as

elevators pass up and down, and especially as they go up, and that it was his duty to caution people to step back whenever he saw them "up in front." Plaintiff insists that the construction of the building and elevator as above outlined was negligent, and that defendant's agent in charge of the elevator was negligent in permitting the plaintiff, who was only a boy, to stand in what he, the conductor, knew was a place of danger.

The fourth instruction given by the court on its own motion is as follows: "You are instructed it was the duty of the defendant, the Bee Building Company, to use the greatest amount of human care and skill consistent with the operation of said elevators to prevent injuries to its passengers while they were being transported from one part of the building to the other. It is also the duty of the defendant to use greater care and caution in transporting passengers of tender age than when carrying adults or passengers of mature years, but in this case there is no presumption of negligence from the mere fact that said Walter Quimby was a passenger and received an injury while being carried by the elevator." Defendant seriously objects to all but the last clause of this instruction, on the ground that it imposed too great a burden upon defendant; that it in fact imposed upon defendant an obligation which was impossible of performance. In this contention we are unable to concur. One who installs passenger elevators in his building for the use of his tenants and the public generally is subject to the same degree of care in transporting and protecting his passengers as is imposed upon common carriers.

In *Marker v. Mitchell*, 54 Fed. 637, the syllabus reads: "A landlord who runs an elevator for the use of his tenants and their visitors thereby becomes a common carrier, and is charged with the highest degree of care which human foresight can suggest, both as to the machinery and the conduct of his servants; and an instruction that he owes to persons thus put completely under his control 'the highest degree of care consistent with the possibility

of injury,' while unfortunate in the choice of words, does not misstate the law, and, being explained by the context, is no ground for reversal." In discussing this instruction in the opinion, Taft, Circuit Judge, said: "I am of opinion that the language used by the court was not fortunate. The highest degree of care consistent with the possibility of injury is rather a blind expression, but it seems to me that it was sufficiently explained by the context in the charge, and that it did not, therefore, mislead the jury. 'Consistent with the possibility of injury,' as thus explained, meant 'commensurate with or proportionate to the possibility of injury in the use of the elevator.' The theory of the court was that the liability of Mitchell in the running of a passenger elevator was the same as that of a common carrier, and the standard for a common carrier is the highest degree of care which human foresight can suggest. This view is sustained by the case of *Goodsell v. Taylor,* a decision of the supreme court of Minnesota, reported in 42 N. W. 873, and by the case of *Treadwell v. Whittier,* a decision of the supreme court of California, reported in 22 Pac. 266. It is contended that such a rule applies to the machinery used, but does not apply to the conduct of the employees of a common carrier. No case has been cited which makes this distinction. On the contrary, the opinion of the supreme court of the United States in *Stokes v. Saltonstall,* 13 Pet. (U. S.) *181, considered in connection with the facts of that case, seems to refute the contention."

In the Minnesota case (*Goodsell v. Taylor,* 41 Minn. 207), cited by Judge Taft, Gilfillan, C. J., says: "The relation between the owner and manager of an elevator for passengers and those carried in it is similar to that between an ordinary common carrier of passengers and those carried by him. The same reason exists for requiring on the part of the owner the utmost human care and foresight, and for making him responsible for the slightest degree of negligence."

In the syllabus of the California case (*Treadwell v.*

*Whittier,* 80 Cal. 574), cited by Judge Taft, it is held: "Persons operating an elevator in lifting passengers are to be treated as carriers of passengers,. and the same duties and responsibilities rest on them as to care and diligence as on the carriers of passengers by stage-coach or railway. Though not insurers of the absolute safety of the passengers, they are bound to the utmost care and diligence of very cautious persons, as far as human care and foresight can go, and are responsible for injury occasioned by the slighest neglect against which human prudence and foresight might have guarded. The responsibility is proportioned to the danger, and is of the highest character in the case of those who operate elevators **for** lifting persons from one level to another."

In *Western Union Telegraph Co. v. Woods,* 88 Ill. **App.** 375, the syllabus reads:

"(1) Persons operating elevators are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to those operating elevators for raising and lowering persons from one floor to another in buildings. It is the duty of such carriers of passengers to use extraordinary care in and about the operation of such elevators so as to prevent injury to persons therein.

"(2) A carrier of passengers by elevator is bound to exercise the highest degree of human care, vigilance and foresight which is reasonable under the circumstances, and in view of the character of the mode of conveyance adopted, reasonably to guard against accidents."

In *Chicago, B. & Q. R. Co. v. Landauer,* 39 Neb. 803, in speaking of the rule as applied to common carriers, we said: "Common carriers of passengers should be held to the strictest accountability and be required to exercise the highest degree of care and forethought of which the human mind is capable. This rule is founded on principles of public policy and enforced by the courts for the protection of the traveling public." In *Spellman v. Lincoln Rapid Transit Co.,* 36 Neb. 890, we applied the rule to street railway companies, and held: "Where a pas-

senger, without negligence on his part, is injured by the derailment of the car in which he is traveling, the carrier, to overcome the presumption of negligence caused by such derailment, must show that the accident was produced by causes wholly beyond its control, and that it had not been guilty of the slightest negligence contributing thereto, and that by the exercise of the utmost human care, diligence, and foresight the casualty could not have been prevented." That case is cited by SULLIVAN, J., and its doctrine reaffirmed in *Lincoln Street R. Co. v. McClellan,* 54 Neb. 672. In the light of the above authorities, the giving of instruction number 4 was not error.

Instruction number 5 is also complained of. It reads: "If you find from a preponderance of the evidence that the defendant, the Bee Building Company, failed to exercise that high degree of care and caution required of them while carrying said Walter Quimby, and the defendant negligently permitted said Walter Quimby to become injured on account of a failure on its part to properly care for said Walter Quimby while a passenger, and you further find that the injuries of said Walter Quimby were the direct result of such negligence on the part of said defendant, then you are instructed that your verdict should be for the plaintiff." We are unable to discover any error in this instruction.

Defendant also complains because the court refused to give instructions 2, 3 and 4, requested by defendant. Number 2 reads: "There is no presumption that the defendant was negligent from the fact that the plaintiff was injured in the elevator, and you must find from a preponderance of the testimony that the defendant in some manner failed to exercise the highest possible care consistent with the operation of the elevator, and that the failure to exercise such care was the proximate cause of plaintiff's injury." This instruction was fairly covered by the last clause of No. 4, given by the court on its own motion.

Instruction number 3 states: "The defendant did not

insure the safety of the plaintiff as a passenger in its elevator, unless the plaintiff kept himself and all parts of his body within the elevator proper; and the defendant owed the plaintiff no duty, under the facts shown by the evidence in this case, to protect him from the consequences of his own carelessness in putting his foot over the edge of the floor, if you find that he was careless in so doing." Instruction number 4 is to the same effect. It reads: "It is not necessary that the plaintiff's conduct should be negligent in order to bar his recovery. If by his voluntary action he put his feet in a place where injury would probably result to him, the elevator conductor was not bound, in any and all events, to push the plaintiff away from the door, unless he knew that the plaintiff was in such position of danger." In *East Saginaw City R. Co. v. Bohn,* 27 Mich. 503, the syllabus reads: "While the company would not be liable to a person of suitable age and discretion who, being warned of the danger in riding upon the front platform of the car, should persist in doing so, yet, in case of a child, lacking such discretion, and to whom, consequently, negligence could not be imputed, it would be the duty of the officers of the company not to stop with a warning, but to compel such child to occupy the proper place in the car." One of the children in that case was a boy twelve and a half years of age. The two instructions above noted are clearly erroneous, in announcing the doctrine that the elevator conductor owed plaintiff, a boy twelve years of age, no duty. We think the very opposite of that is true. This elevator conductor knew that it was dangerous to stand near the door of the elevator when it was in motion. He knew that it was his duty to warn passengers, whether children or adults, to stand back from the door. He failed to give such warning to plaintiff, who, at the time, was the only passenger in the car. He seeks to justify his conduct by saying that he was giving his attention to the running of his car. But it is a matter of common knowledge that such a car is managed by the manipula-

tion of a lever, which is done with one hand, and that the conductor has the free play of his eyes and of his other hand, by the diligent use of which he can guard against just such accidents as happened in this case. We think the case was properly submitted to the jury, and that it was warranted in finding the defendant guilty of negligence in not properly warning and safeguarding this boy while a passenger in its elevator, regardless of the question as to whether or not there was negligence in its construction.

The judgment of the district court is

AFFIRMED.