ROY E. CUBBAGE, v. ESTATE OF CONRAD YOUNGERMAN, Incorporated, Appellant.

**Negligence:** ELEVATOR ACCIDENT: CARE REQUIRED OF OWNER. One who operates a passenger elevator in a building to which the public is invited and makes use thereof is held to the same measure of care that is required of public carriers of passengers; that is the highest degree of skill and foresight consistent with the efficient use and operation of the means of conveyance.

**Same:** INCOMPETENT EMPLOYEE: NEGLIGENCE OF MASTER. Habitual negligence and carelessness in the performance of the duties of an employee in operating a passenger elevator may constitute negligence chargeable to the employer, because maintaining the employee in his service regardless of his age or experience.

**Same:** REPAIR OF MACHINERY: EVIDENCE. Under the evidence in this case it is held that the question of whether the elevator machinery had been kept in reasonable and proper repair was for the jury.

**Same:** NEGLIGENT OPERATION OF ELEVATOR: EVIDENCE. Where a passenger elevator is stopped for persons to get off they must be given a reasonable opportunity to do so; and it is the business of the operator to see that persons will not be injured while attempting to get off by again starting the car regardless of whether he had been advised that a particular passenger desired to get off at that stop. In this case the evidence of negligence in this respect is held to require submission of the issue to the jury.

**Same:** CONTRIBUTORY NEGLIGENCE. An elevator passenger is not negligent as matter of law in attempting to alight at a landing without specifically advising the operator beforehand that he desired to do so.

**Same:** PROXIMATE CAUSE: INSTRUCTIONS. Where it clearly appeared from the instructions given that plaintiff could not recover unless the proximate connection between the negligence proved and the injury suffered was shown, failure to specifically instruct on that subject was not erroneous.

**Same:** IMPAIRMENT OF EARNING CAPACITY: EVIDENCE: PRESUMPTION. Impairment of earning capacity may be presumed from physical impairment, the extent being a question for the jury. And recovery for impairment of earning capacity is not limited to such capacity in plaintiff's present position or vocation.

**Evidence:** MORTALITY TABLES: INSTRUCTIONS. In a personal injury action mortality tables are admissible to show the expectancy of life of the person injured; and where there was no evidence showing physical impairment calculated to materially shorten life and the mortality tables constituted the only evidence of probable duration of plaintiff's life, an instruction that such tables might be considered as evidence of plaintiff's expectancy, without advising the jury that they should take into account all the evidence relating to plaintiff's health and physical condition was not reversible error.

**Same:** EVIDENCE: PHOTOGRAPHS AND DRAWINGS. Photographs and drawings illustrating plaintiff's position in the car at the time of the accident, while not admissible as independent evidence, were proper in explanation of his testimony, where it clearly appeared that they were made at the direction of the plaintiff by one not present at the time of the accident.

**Same:** SUDDEN EMERGENCY: INSTRUCTIONS. The doctrine of sudden emergency applies in determining questions of contributory negligence; but, as in this case, it may be considered in determining whether the elevator boy exercised reasonable care in stopping the car, but as there was nothing in the instructions justifying the jury in assuming that failure to stop the car before plaintiff was injured was in itself negligence, refusal to instruct concerning the effect of a sudden emergency as applied to the conduct of the elevator boy was not erroneous.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

MONDAY, MARCH 11, 1912.

. ACTION to recover for injuries sustained by plaintiff while riding in a passenger elevator operated in an office building belonging to and under the control of the defendant estate. There was a verdict for the plaintiff for $4,000, and from judgment on this verdict the defendant appeals.— *Affirmed.*

*Clark & Hutchinson,* for appellant.

*Read & Read,* for appellee.

McCLAIN, C. J.—The grounds of negligence alleged were that defendant had in charge of the operation of the elevator at the time of the accident an incompetent operator; that defendant allowed the car to be operated with knowledge of defective condition of its machinery and appliances; and that the operator in charge of the car was careless and negligent in its operation, mangement, and control. The appellant questions the sufficiency of the evidence to take the case to the jury as to each of the alleged grounds of negligence and complains of the instructions given by the court with reference to the degree of care required of the defendant in maintaining and operating the elevator. Complaint is made also of the admission of two items of evidence, and it is contended further that the verdict was excessive.

I. As the sufficiency of the evidence to take the case to the jury on the grounds of negligence alleged must depend to some extent on the measure of care required of the defendant in maintaining and operating the elevator, that question will be first considered. By a decided preponderance in the weight of authority, the measure of care and diligence required of one who maintains and operates a passenger

1. NEGLIGENCE: elevator accident: care required of owner.

elevator in a building into which the public is invited to come and make use of such elevator for usual purposes is the same as that required of public carriers of passengers; that is, the highest degree of skill and foresight consistent with the efficient use and operation of the means of convey-ance.    1 Hutchinson, Carriers (3d Ed.) section 100; 1 Thompson, Negligence, section 1078; 10 Am. & Eng. Enc. of Law (2d Ed.) 946.   It would be of no advantage to enter into an elaborate discussion of the facts and reason-ing of the cases cited in the text-books in support of this general proposition.   A few recent cases may properly be added, however, to those cited in the authorities above re-ferred to.   *Quimby v. Bee Building Co.,* 87 Neb. 193 (127 N. W. 118, 138 Am. St. Rep. 477); *Ohio Valley Trust Co. v. Wernke,* 42 Ind. App. 326 (84 N. E. 999); *Sweeden v. Atkinson Improvement Co.,* 93 Ark. 397 (125 S. W. 439, 27 L. R. A. (N. S.) 124); *Farmers' & Mechanics' Nat. Bank v. Hanks,* (Tex. Civ. App.) 128 S. W. 147; *Shella-berger v. Fisher,* 143 Fed. 937 (75 C. C. A. 9, 5. L. R. A. (N. S.) 250).   In New York and Michigan passengers in elevators are entitled to only the ordinary care which the owner of land is required to exercise for the protection of persons who by invitation come upon his premises.   *Grif-fen v. Manice,* 166 N. Y. 188 (59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630); *Burgess v. Stowe,* 134 Mich. 204 (96 N. W. 29).   In Massachusetts it is held that one maintaining a passenger elevator in an office building is not a common carrier of passengers as defined by statute; but the court does not define or attempt to indicate the degree of care required for the protection of the elevator passenger against injury.   *Seaver v. Bradley,* 179 Mass. 329 (60 N. E. 795, 88 Am. St. Rep. 384).   It may well be that the owner of a building operating a passenger elevator therein is not a common carrier of passengers; but the authorities above cited, with the three exceptions noted, hold that the relation of the owner and operator to the passenger is so

far analogous to that of a carrier to a passenger as that the degree of care required for the protection of the passenger from injury is the same. This view we think to be not only supported by the great weight of authority, but intrinsically sound, and we have no hesitation in adopting it. The court did not err, therefore, in giving instructions to the jury on this theory.

II. We have no serious difficulty under the record in finding that there was sufficient evidence to take the case to the jury on each of the grounds of negligence alleged and submitted. As to the alleged negligence in failing to have a competent operator in charge of the car, it is sufficient to say that although the elevator boy in charge was twenty years of age, and had had more than two months' experience, he had, according to his own evidence, been in the habit of starting the car before closing the door of access; at least, the jury might have drawn this inference from his testimony. Habitual negligence and carelessness in the performance of the duties involved in the employment may constitute incompetency chargeable to the employer as negligence in retaining the employee in his service. *Maitland v. Gilbert Paper Co.,* 97 Wis. 476 (72 N. W. 1124, 65 Am. St. Rep. 137); *Wall v. Delaware, L. & W. R. Co.,* 54 Hun, 454 (7 N. Y. Supp. 709); *Malay v. Mt. Morris Electric Light Co.,* 41 App. Div. 574 (58 N. Y. Supp. 659); *Cameron v. New York Cent. & H. R. R. Co.,* 77 Hun, 519 (28 N. Y. Supp. 898); *Coppins v. New York Central R. Co.,* 122 N. Y. 557 (25 N. E. 915, 19 Am. St. Rep. 523); *Smith v. Backus Lumber Co.,* 64 Minn. 447 (67 N. W. 358); *Hughes v. Baltimore & O. R. Co.,* 164 Pa. 178 (30 Atl. 383, 44 Am. St. Rep. 597).

III. As to the condition of the machinery, there is evidence tending to show that, although the electric power was shut off and the brake automatically applied when the floor of the car was only about two feet higher than the

*2. SAME: incompetent employee: negligence of master.*

bottom of the door or exit, the car did not stop until plaintiff's legs were jammed against the top of the opening, which was seven feet high, and that the attention of the superintendent had three days before been called to the fact that the car would slide at times more than was usual. It was for the jury to say whether the machinery had been kept in a reasonable and proper condition of repair. *Anderson v. Greenburg,* 118 Ill. App. 220.

3. SAME: repair of machinery: evidence.

IV. In determining whether there was any evidence justifying a submission to the jury of the question whether the employee in charge of the elevator was careless and negligent in the operation, management, and control of the car, the following facts are to be considered: The plaintiff, an attorney employed in the offices of a firm on the fifth floor of the building, entered the car at the main floor with one Loftis, who occupied an office on the fourth floor. The elevator boy knew the usual destination of each, but neither announced his destination on that trip. At the fourth floor the elevator boy stopped the car and threw open the door, and Loftis immediately stepped out. Plaintiff attempted to follow him; the two being in conversation. The elevator boy, apparently not noticing that plaintiff was stepping from the car with Loftis, turned on the power and attempted to close the door, which struck the leg of plaintiff as he was attempting to step out. Thereupon the elevator boy attempted to shut off the power, but the car did not stop, and plaintiff's head struck against the top of the shaft opening. By this concussion he was thrown backward to the floor of the car, his feet protruding through the opening and being brought in contact with the top of the door frame.

4. SAME: negligent operation of elevator: evidence.

Under these facts, we think it clear that it was a question for the jury whether the elevator boy was negligent in starting the car before he knew whether plaintiff was attempting to get off. Even if plaintiff had announced his

destination, it was the duty of the elevator boy to guard against inadvertence or a change of mind on his part by seeing to it that he was not in a position of danger when the elevator started.   The situation can be well illustrated by a case where a number of persons are in an elevator car destined for different floors.   The elevator boy would have no right to assume that each would attempt to get off only at a floor which he had previously specifically designated.   The concern of the passenger in announcing the floor of his intended exit is only to procure the stoppage of the car at that floor.   When the car is stopped for persons to get off, any passenger desiring to leave the car at that place has the right to have a reasonable opportuntiy to do so, and it is the business of the elevator boy to see, before the car is started, that the starting of the car will not put any of his passengers in peril.   The case is very analogous to that of a street car which has been stopped at a regular crossing to afford passengers the opportunity to alight at that crossing. It is clear that the conductor of such a car would be negligent in causing it to start while a passenger was attempting to get off, regardless of whether the conductor had been advised that the particular passenger desired to get off at that stop.   *Boice v. Des Moines City R. Co.,* 153 Iowa, 472; *Root v. Des Moines City R. Co.,* 113 Iowa, 675.   Specifically as to the duty of the employee operating a passenger elevator not to start the car before closing the door and seeing that no one will be placed in peril, see *Belvedere Building Co. v. Bryan,* 103 Md. 514 (64 Atl. 44); *Becker v. Lincoln Real Estate & Building Co.,* 174 Mo. 246 (73 S. W. 581); *Luckel v. Century Building Co.,* 177 Mo. 608 (76 S. W. 1035).   There was also a question for the jury as to whether the elevator boy was negligent in the management of the elevator after he discovered the peril to the plaintiff.

V.   Under the facts as stated in the last preceding division, the question of plaintiff's contributory negligence was clearly one for the jury.   He was certainly not negli-

gent as matter of law in attempting to get off at a landing
at which the elevator had been stopped, with-
out specifically advising the elevator boy be-
forehand that he desired to get off at that
landing. *Chicago Exchange Building Co. v. Nelson,* 197
Ill. 334 (64 N. E. 369); *Blackwell v. O'Gorman Co.,* 22
R. I. 638 (49 Atl. 28).

5. SAME: con-
tributory neg-
ligence.

VI. Instructions, specifying the negligence charged
and which the jurors might consider, are complained of on
the ground that they do not indicate to the jury the neces-
sity of finding that such negligence, if prov-
ed, must appear to have been the proximate
cause of plaintiff's injury in order to entitle
him to recover. The question of proximate connection be-
tween the negligence proved and the injury suffered was
sufficiently covered by other instructions of which no com-
plaint is made. The jury could not, under the instructions,
have failed to understand that in order for plaintiff to
recover it must appear that his injury was the proximate
result of the negligence alleged and proved.

6. SAME: proxi-
mate cause:
instructions.

VII. The court in its instructions allowed the jury
to take into consideration, in fixing plaintiff's damages, the
diminution in his earning capacity, due to his injuries
which as the evidence tended to prove, were
in some respects permanent. An instruction
was asked withdrawing from the jury any
question as to loss on account of diminution
in earning capacity, which the court refused to give. The
contention for appellant is that there was no evidence what-
ever to show any such loss; the only direct evidence on the
subject being that plaintiff's salary was increased soon after
the injury. But counsel's argument is based on the erron-
eous assumption that the only competent evidence of damage
on account of loss of earning capacity is that afforded by
proof that on account of the injury the actual earnings of
the injured party were less than before the injury. This

7. SAME: impair-
ment of earn-
ing capacity:
evidence: pre-
sumption.

might be competent evidence, but the converse is not neces-
sarily true.   Plaintiff testified that since the injury he had
been subject to headaches, that his hearing in one ear had
been impaired, and that one knee was injured and weakened
so that he used it with difficulty, especially in walking up
an incline.   Physicians testified that the liability to head-
aches and the impairment of hearing were the result of the
injury to plaintiff's head in the collision with the top of
the elevator door frame; that they were probably perman-
ent; and further that there had been a severance of some
nerves of plaintiff's leg above the knee which would perma-
nently incapacitate him from physical labor and subject him
to continued rheumatic trouble, which had already affected
the knee as the result of the injury.   There is also some testi-
mony of physicians to the effect that plaintiff's health is gen-
erally impaired.   We do not understand that impairment of
earning capacity for which plaintiff may recover is limited to
earning capacity in his present position, or even in his present
vocation.   It may be true that a lawyer can do as much busi-
ness and get as large fees with an injured knee as though he
were physically sound; but that is not necessarily true, even
in such vocation, and certainly recurring headaches may
seriously impair the earning capacity of a lawyer, although
they may not have injuriously affected plaintiff's immediate
earning capacity as an assistant in a law office.   Because plain-
tiff is now merely an assistant in a law office is no reason why
it shall be presumed that he will not in due course of time
engage in a general practice in which recurrence of head-
aches and partial loss of the power of hearing will be
serious impediments upon his earning capacity.   Indeed, he
may desire to and be justified in undertaking some business
in which his impaired physical condition will be a direct
handicap on his earning capacity.   We understand the rule
to be that impairment of physical capacity in itself may be
presumed to impair the general earning capacity of the
person who is injured; the extent of impairment being a
question for the jury under all the circumstances.   *Wimber*

*v. Iowa Central R. Co.*, 114 Iowa, 551. And see, as lending some support to this view, *Fisher v. Jansen*, 128 Ill. 549 (21 N. E. 598); *McGarrahan v. New York, N. H. & H. R. Co.*, 171 Mass. 211 (50 N. E. 610); *Gulf, W. T. & P. R. Co. v. Abbott* (Tex. Civ. App.) 24 S. W. 299; . *Hamilton v. Great Falls S. R. Co.*, 17 Mont. 334 (42 Pac. 860, 43 Pac. 713).

VIII. Life tables were introduced in evidence over the defendant's objection, showing the expectancy of life of a person of plaintiff's age, and the court instructed the jury that in ascertaining the amount to be allowed as compensation for future pain and suffering and for future depreciation of ability to earn money as the result of physical injuries, the jury might take into consideration plaintiff's reasonable expectancy of life and as evidence thereof the mortality tables introduced in the case. On this subject there are two complaints for appellant: First, that because of plaintiff's impaired physical condition the tables relating to the general average of healthy persons afforded no criterion as to the probable duration of his life; and, second, that the court did not leave it to the jury to say what was his probable expectancy of life under the circumstances of the case.

8. EVIDENCE: mortality tables: instructions.

That life tables are admissible in evidence, although the person whose expectancy is in question is not in normal health, is too well settled now to be the subject of any serious discussion. Such tables have been held admissible even where recovery was sought for pain and suffering and impairment of earning capacity on the part of one so seriously injured and crippled that there was little probability of his living out the period of expectancy. *Patton v. Town of Sanborn*, 133 Iowa, 650; *Clark v. Van Vleck*, 135 Iowa, 194; *Coates v. Burlington, C. R. & N. R. Co.*, 62 Iowa, 486; *Louisville Bolt & Iron Co., v. Hart*, 122 Ky. 731 (92 S. W. 951); *Pecos & N. T. R. Co. v. Williams*, 34 Tex. Civ. App. 100 (78 S. W. 5).

It was not reversible error for the court to instruct the jury that the life tables might be considered as evidence of plaintiff's expectancy without further instructing them that they should take into account in this respect all the evidence in the case relating to plaintiff's health and physical condition, in the absence of any request for more specific instructions. *Grace v. Minneapolis & St. L. R. Co.,* 153 Iowa, 418; *City of Friend v. Ingersoll,* 39 Neb. 717 (58 N. W. 281); *Camden & A. R. Co. v. Williams,* 61 N. J. Law, 646 (40 Atl. 634); *Belmer v. Boyne City Tanning Co.,* 160 Mich. 669 (125 N. W. 726); *Chicago Veneer Co. v. Jones,* 143 Ky. 21 (135 S. W. 430). In this case there was no necessity for any qualifying instruction, for the reason that there was no evidence showing any physical impairment calculated to materially shorten life, and the life tables furnished the only evidence in the case as to how long plaintiff would probably live.

IX. In explanation of his testimony, plaintiff referred to certain exhibits consisting of photographs and drawings illustrating plaintiff's position in the car at the time of the accident. These exhibits were objected to on the ground that there was no evidence that they correctly represented the situation. The character of the representations, as made under plaintiff's direction by one who was not present at the time of the accident, was fully made to appear, and the jury could not have been misled into supposing that they were admitted for any other purpose than to illustrate plaintiff's testimony to the extent to which they were relied upon by him. Such sketches have been regarded as admissible in other courts, and we see no objection to their use in a proper manner and in a pertinent case. *Luckel v. Century Building Co.,* 177 Mo. 608 (76 S. W. 1035); *Lee v. Publishers' Co.,* 155 Mo. 610 (56 S. W. 458); *Bowling Green Gaslight Co. v. Dean's Executrix,* 142 Ky. 678 (134 S. W. 1115). As independent evidence, these exhibits were not admissible;

9. SAME: evidence: photographs and drawings.

but as mere sketches, diagrams, or illustrations enabling the plaintiff to testify more intelligibly, they were without objection, as they enabled the jury to better understand the subject-matter about which the witness was testifying. It is so common a practice to allow witnesses to draw plats or diagrams of a locality for the purpose of enabling the jurors to understand the bearing of the testimony given that we would not feel justified in flying in the face of general usage and practice in the courts by holding them inadmissible because they are not otherwise so verified as to make them independent evidence. *Western Gas Co. v. Danner,* 97 Fed. 882 (38 C. C. A. 528).

X. The refusal of the court to give a requested instruction as to the effect of a sudden emergency in excusing the conduct of the elevator boy in not sooner stopping the car is fully justified by what we have recently said in the case of *Boice v. Des Moines City R. Co.,* 153 Iowa, 472. The doctrine of sudden emergency has usually, and so far as we are advised always, been recognized only in determining the question of contributory negligence. Of course, the suddenness of the emergency might be taken into account in determining whether the elevator boy exercised the degree of care required. There was nothing in the instructions of the court which would have justified the jury in assuming that under the circumstances the failure of the elevator boy to stop the car before the plaintiff was injured, or before some of his injuries had been received, was in itself necessarily negligence. The instruction asked was not required in order to guard the jury against such a conclusion.

10. SAME: sudden emergency: instructions.

Some other complaints made with reference to the instructions given and refused are not of such character as to merit specific discussion.

XI. In view of the evidence tending to show permanent injury and resulting future pain and suffering and

physical disability, we think there is no occasion to discuss the contention that the verdict is excessive.

The judgment of the trial court is *affirmed*.